## The Kentucky Trust and Security Co. v. Ringo.

(Decided October 31, 1911.)

Appeal from Fayette Circuit Court.

Damages—Action for Wrongful Taking of Goods—Evidence—Punitive Damages.—In an action for damages for the wrongful taking of property, the question was whether the property was taken as charged, and the evidence being such as to take the case to the jury, a verdict for $250.00 will not be disturbed. The weather was cold, the things taken were all appellee had, and the jury was authorized to award the damages sustained, but further damage in the way of smart money.

W. C. G. HOBBS for appellant.

J. H. MINOGUE, J. FRANK WALLACE for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Minnie Ringo, a negro woman living in Lexington, instituted this suit against the Kentucky Trust & Security Co., in which she sought to recover damages for the wrongful taking from her house and possession of certain household goods and furniture of the value of $250. She prayed for damages in the sum of $1,000. Upon a trial before a jury she recovered a verdict and judgment for $350. The company appeals.

Several grounds are set up and relied upon a reversal, chief of which is that the court erred in refusing to peremptorily instruct the jury to find for the defendant company. The petition charged the company and several of its officers and agents and others with having unlawfully and without right entered her house during her absence and taken away all of the articles of household furniture contained therein, including two beds, a sewing machine, chairs, range, bed clothing, carpet, and other articles. The suit was dismissed as to all of the defendants save the company. Its defense was simply a denial. It did not claim that the appellee was indebted to it or that it had any claim upon the property, or otherwise attempt to excuse itself for having taken this property; so that the only question submitted to the jury was whether or not it had taken the property as charged.

Upon this point plaintiff testified that one McDaniel, an agent of the company, came to her house, accompanied by a constable, and, over her objection, took her furniture therefrom, assisted in loading it into a wagon, hauled it down town, and put it in a public storage room; that, seeing she could not induce either the constable or the agent McDaniel to surrender her furniture to her, she went to the office of appellant company and there made complaint

to F. C. Foxworthy, the manager in charge, and requested him to have her articles of furniture returned to her; that he refused to do so, although she told him that she did not owe his company anything whatever and had never borrowed any money from him. She further testified that Mr. Foxworthy on this occasion told her that in taking her furniture McDaniel had acted under his direction. After the lapse of some eight or ten days she returned again to the office of appellant company and requested Mr. Foxworthy to let her have her furniture, and on this occasion he telephoned to the storage house and directed the man in charge to let her have it. She then requested him to pay the cost of having it hauled back to her home. This he refused to do, and she was compelled to pay, not only the cost of taking her furniture back home, but the storage thereon.

Her granddaughter, Mary Gant, a girl eighteen years of age, testifies that Mr. McDaniel, the agent of the company, came to her grandmother's house with a constable and proceeded to denude it of all of its furnishings. She thereupon went in haste for her grandmother, who was working near by, and had her grandmother come home, and in her presence her grandmother protested that she was being badly treated and her furniture taken without right. In response to this protest on her part, the agent of the company, McDaniel, and the officer, told her to shut up, and that if she did not they would take her too. She further testifies that she went with her grandmother, following the wagonload of furniture to the warehouse and from there to the office of appellant company, and heard the conversation between her grandmother and Mr. Foxworthy, and she corroborates in all of its essential features the testimony of her grandmother as to this conversation. She was likewise with her on the second trip that her grandmother made to the office of appellant company, when the furniture was directed to be turned over to her.

This is the testimony for plaintiff. If true, it shows that without right or excuse the agent of appellant, acting under authority of its manager, went to the home of this negro woman and in a high-handed, unwarranted and inexcusable manner took all of her property, carted it away, and deprived her of the use of it for ten days in cold, mid-winter weather.

Foxworthy, the manager, denied all knowledge of the

transaction, and insisted that appellee and her grand-daughter did not call upon him; that at the time they claim to have done so he was in the South; and that while McDaniel was in the employ of the company, it was only in the capacity of collector. McDaniel admits that he went to the home and was present when the furniture was removed therefrom, but denies that he was there in his capacity as agent for the appellant. He says he went mere-ly as a friend of the constable to show him where Henry Hughes, for whose furniture he had an attachment, lived. The Justice of the Peace and his records were introduced, but neither his testimony nor the records of his court throw any light upon the mooted question as to whether or not this furniture was removed from appellee's home by the authority or under the direction of appellant. The constable was likewise introduced. His testimony is un-important, further than to show that at one time he had a summons for Henry Hughes and Minnie Hughes, issued from the court of Justice of the Peace Abner Oldham, in the suit of appellant company against them, wherein the appellant sought to recover of them $5. The return on this summons shows that it was executed on Henry Hughes on January 19th, but not on Minnie Hughes; and on the same day he made a return on an order of attach-ment, which issued from the same court, showing that he had executed it by serving a true copy on Henry Hughes and levying upon the articles of furniture which he had taken from Minnie Ringo. A copy of the proceedings in the Justice's Court, entered on the 26th day of January, the day this case was set for trial, shows that on that day a default judgment was rendered against Minnie Hughes for $6.80, although the return on the summons shows that it was not executed on her at all, and that she was not before the court, and no evidence of debt against her appears with the record. However, as the defense was a traverse and appellant did not seek to justify the seizure of the goods, this testimony of the magistrate and his constable, together with the copies of his record filed by them, afford no aid in arriving at the merits of this controversy.

Clearly when appellee and her granddaughter testify that the manager in charge of appellant company told them that he had directed his agent to take these goods, the court would not have been warranted in entertaining the motion for a peremptory instruction, either at the conclusion of plaintiff's testimony or after all of the evi-

dence had been introduced, for the rule is well settled in this State that where there is any evidence the case must be submitted to the jury. Under this rule the court properly submitted the question to the jury.

Plaintiff testifies that her furniture was in good condition when taken away from her, and that it was badly handled and misused while out of her possession, and that it was worth as much as $250.. It may be true, as suggested by appellant's counsel, that this was an exaggerated value. Still there is no testimony offered tending to show that it was worth less. But conceding, for the sake of argument, that it had but little value, it was all that appellee had, and if taken from her without right or lawful excuse, under the circumstances detailed by her in her testimony, the jury was warranted in awarding to appellee, not only such damage as she actually sustained, but further damage by way of smart money. Punitive damages being authorized, the claim that the damages are excessive is not well taken. If the agents of appellant were rude and insulting in their manner toward appellee, and the jury having found that they invaded her home without right and took all of her furniture from her in the manner indicated, we would be unwilling to say that a verdict for $350 might not with propriety have been returned as punitive damages alone.

Other reasons are assigned why the judgment should be reversed, but upon a careful reading of the record we fail to find where any error prejudicial to appellant's substantial rights was committed during the progress of the trial.

Judgment affirmed.