178

Columbus Finance, Inc., Appellee and Cross-Appellant, v. Howard et al., Appellants and Cross-Appellees.

[Cite as Columbus Finance v. Howard (1975), 42 Ohio St. 2d 178.]

(No. 74-152—Decided April 30, 1975.)

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Thomas M. Taggart* and *Mr. James H. Hedden,* for appellee and cross-appellant.

*Mr. James B. Albers,* for appellants and cross-appellees.

O'NEILL, C. J. Columbus Finance has not contested those portions of the trial court's judgment denying recovery on the two cognovit notes and awarding the Howards compensatory damages for loss of use of their automobile. These matters are, therefore, not at issue in this appeal; that Columbus Finance wrongfully executed on the Howards' automobile is established.* What is at issue is the availability, in an action for wrongful execution, of two

---

*Both lower courts referred to the action asserted in the cross-complaint as one for wrongful attachment. This designation was incorrect. Attachment has been defined as "a provisional auxiliary remedy, created by statute, whereby a creditor can obtain a contingent lien on property of the debtor, and thus have this property kept available to satisfy any judgment which he may recover against the debtor * * *." Oleck, Debtor-Creditor Law, 30, Section 8. This court has described attachment as "an execution before judgment * * *." *Green* v. *Coit* (1909), 81 Ohio St. 280, 285, 90 N. E. 794, 795. In this state, the tort of wrongful attachment is an offshoot of malicious prosecution or abuse of process. *Fortman* v. *Rottier* (1858), 8 Ohio St. 548; *Crow* v. *Sims* (1913), 88 Ohio St. 214, 102 N. E. 741. There was no attachment in the present case; the Howards' automobile was seized by the finance company not as security for a potential judgment, but to satisfy a judgment already rendered.

The prejudgment remedy of attachment has a postjudgment counterpart—the writ of execution. 30 American Jurisprudence 2d 445, Execution, Section 1, describes executions in these terms:

"Generally speaking, an execution is a remedy afforded by law for the enforcement of a judgment. It is the means by which a judgment is made effective. Its object is to obtain satisfaction of the judgment on which the writ is issued."

A person whose property is wrongfully seized pursuant to a writ of execution has a cause of action based either on trespass—*Gibson Stockwell & Co.* v. *Chillicothe Branch Bank* (1860), 11 Ohio St. 311—or conversion—*Sparling* v. *Todd* (1875), 27 Ohio St. 521; *Kimmel* v. *Paronto* (1895), 52 Ohio St. 468, 43 N. E. 1040. The present appeal clearly involves a wrongful execution.

categories of money damages: punitive damages and compensatory damages for mental suffering and humiliation. Since wrongful execution is a tort action, the resolution of these issues is dependent upon principles generally applicable to tort actions.

## I.

The Howards contend that the Court of Appeals erred in reversing the trial court's award of punitive damages and attorney fees. The reversal was based on the appellate court's conclusions that actual malice is an essential element to justify the award of punitive damages, and that the record revealed no evidence of such malice on the part of Columbus Finance. This court agrees with both conclusions.

It is an established principle of law in this state that punitive damages may be awarded in tort cases involving fraud, insult or malice. *Roberts* v. *Mason* (1859), 10 Ohio St. 277; *Saberton* v. *Greenwald* (1946), 146 Ohio St. 414, 66 N. E. 2d 224. If punitive damages are proper, the aggrieved party may also recover reasonable attorney fees. *Roberts* v. *Mason, supra; Peckham Iron Co.* v. *Harper* (1884), 41 Ohio St. 100; *Davis* v. *Tunison* (1959), 168 Ohio St. 471, 155 N. E. 2d 904. Appellants premise their claim for punitive damages on the finance company's alleged malice in executing on the automobile.

The parties disagree as to a general description of the conduct which constitutes malice sufficient to sustain an award of punitive damages. Appellee contends that an award of punitive damages is proper only if "actual malice" on the part of the wrongdoer is shown. There is case law which directly supports that position. *Davis* v. *Tunison, supra; Pickle* v. *Swinehart* (1960), 170 Ohio St. 441, 166 N. E. 2d 227. See, also, *Smithhisler* v. *Dutter* (1952), 157 Ohio St. 454, 105 N. E. 2d 868, in which this court recognized that actual malice is ordinarily required in order to sustain an award of punitive damages, but that an exception is made for cases involving alienation of affection of a spouse.

Actual malice was defined in one punitive damages

case as " 'that state of mind under which a person's conduct is characterized by hatred or ill will, a spirit of revenge, retaliation, or a determination to vent his feelings upon other persons.' " *Pickle* v. *Swinehart, supra,* at 443 (quoting 35 Ohio Jurisprudence 2d 142, Malicious Prosecution, Section 22).

Appellants assert in their sole proposition of law that "intentional, reckless, wanton, wilful and gross acts which cause injury to person or property may be sufficient to evidence that degree of malice required to support an award of punitive damages in tort actions." This broad statement is also correct; actual malice may be inferred from conduct and surrounding circumstances. *Davis* v. *Tunison, supra.* However, this court concurs in the conclusion of the Court of Appeals that the record in this case contains absolutely no evidence from which actual malice upon the part of Columbus Finance can be inferred. Therefore, the Court of Appeals correctly reversed the trial court's award of punitive damages and attorney fees.

## II.

Columbus Finance contends, as cross-appellant, that the Court of Appeals erred in affirming the trial court's award of $760 compensatory damages for Mrs. Howard's mental suffering, anguish and humiliation. This court agrees with that contention.

In a tort action, the measure of damages is normally that amount of money which will compensate and make whole the injured party. *Pryor* v. *Webber* (1970), 23 Ohio St. 2d 104, 263 N. E. 2d 235. Plaintiffs should be neither undercompensated nor overcompensated. Ordinarily, the injured party must be able to prove not only that he suffered a particular type of injury, but also the pecuniary value thereof.

The existence and value of damages attributable to mental anguish and humiliation are notoriously difficult to prove. Such damages are easily feigned and practically impossible to value. Nevertheless, it is a certainty that such damages are caused by some wrongful acts. In an admitted-

ly imperfect effort to separate the valid from the invalid claims, certain rules have been developed. For example, there is liability in this state for negligent infliction of mental distress only if the complained of act also resulted in a contemporaneous physical injury. *Miller* v. *Baltimore & Ohio Southwestern Rd. Co.* (1908), 78 Ohio St. 309, 85 N. E. 499; *Davis* v. *Cleveland Ry. Co.* (1939), 135 Ohio St. 401, 21 N. E. 2d 169. The apparent rationale behind this rule is that the observable physical injury caused by the wrongdoer sufficiently corroborates the injured party's allegation of unobservable psychic injury. In the absence of a contemporaneous physical injury, damages attributable to mental distress are usually recoverable only if the wrongdoer's act is a malicious or outrageous invasion of a personal right. See *Miller* v. *Baltimore & Ohio Southwestern Rd. Co., supra; Housh* v. *Peth* (1956), 165 Ohio St. 35, 133 N. E. 2d 340. In such a factual situation, the courts are confronted with an innocent victim and an intentional wrongdoer, and hence it is not surprising that the interest of the victim in obtaining full compensation is placed above the interest of the wrongdoer in protecting himself against potentially speculative damage awards.

The wrongful execution in the present case involved neither contemporaneous physical injury to the Howards nor malicious or outrageous conduct on the part of Columbus Finance. Therefore, this court holds that the trial court's award of damages for mental anguish and humiliation was unwarranted. Other jurisdictions, in cases factually equivalent to this appeal, have rendered similar holdings. *Tisdale* v. *Major* (1898), 106 Iowa 1, 75 N. W. 663; *Gilbert* v. *Rothe* (1921), 106 Neb. 549, 184 N. W. 119; *Chappell* v *Ellis* (1898), 123 N. C. 259, 31 S. E. 709; *Stone* v. *C. I. T. Corp.* (1936), 122 Pa. Sup. 71, 184 A. 674; *Ainsa* v. *Moses* (Tex. Civ. App. 1907), 100 S. W. 791; *Anderson* v. *Sloane* (1888), 72 Wis. 566, 40 N. W. 214.

For the foregoing reasons, that portion of the judgment of the Court of Appeals reversing the trial court's award of punitive damages and reasonable attorney fees

is affirmed, and that portion of the judgment of the Court of Appeals affirming the trial court's award of compensatory damages for mental suffering, anguish and humiliation is reversed.

*Judgment affirmed in part and reversed in part.*

STERN and P. BROWN, JJ., concur.

W. BROWN, J., concurs in paragraph one of the syllabus and in the judgment.

HERBERT and CORRIGAN, JJ., concur in paragraph two of the syllabus and dissent from the judgment in part and concur in part.

CELEBREZZE, J., dissents.

CORRIGAN, J., dissenting in part and concurring in part.

At least two reasons impel me to withhold my assent from the first paragraph of the syllabus herein, and from Part I of the majority opinion and the judgment thereon which reversed the trial court's award of punitive damages and reasonable attorney fees.

I do concur in paragraph two of the syllabus and in Part II of the opinion and the judgment thereon.

The primary reason for my disagreement is that paragraph one of the syllabus erroneously states the law that would govern punitive damages in an action for wrongful execution in Ohio in the future. Secondly, the rationale and conclusion of Part I of the majority opinion misconceives the applicable principles of punitive damages. To promulgate the doctrine that, in an action for wrongful execution, actual malice, fraud or insult on the part of the wrongdoer must be shown in order to justify an award of punitive damages is, in my view, heterodox.

As stated in 30 American Jurisprudence 2d 873, Executions, Section 766: "In a proper case, punitive damages may be recovered in an action for wrongful execution. This is true where it appears that the *defendant* * * * [*engaged in*] *such conduct,* either *wilful,* wanton, or grossly

negligent as to show a conscious indifference to consequences. * * *" (Emphasis added.) Under such circumstances malice may be implied, and a showing of actual malice is not needed. Actual malice is that state of mind under which a person's conduct is characterized by hatred or ill will, a spirit of revenge, retaliation, malevolence, spite, or enmity toward another person. However, malice may be implied when a person intentionally does an act which is wrongful to the detriment of another. The term "wrongful" imparts in its turn the infringement of some right.

The rule as to malice, in connection with punitive damages, is stated as follows by Hart, J., in his dissenting opinion in *Saberton v. Greenwald* (1946), 146 Ohio St. 414, at page 437, and there was no division of the court on this statement:

"This court has, over the years, recognized the propriety of submitting to a jury the question of assessment of punitive damages *in certain tort cases where the defendant's wrongdoing has been intentional and deliberate,* or has the character of outrage frequently associated with crime. * * * Generally the application of the doctrine is confined to cases where there is involved actual malice, interference with marital relations, or wanton personal injury, such as in cases of seduction, assault and battery, false imprisonment, or wrongful expulsion from public passenger vehicles or places of public entertainment." (Emphasis added.)

The rule was succinctly reiterated in the charge of the trial court as reported in the case of *Smithhisler v. Dulter* (1952), 157 Ohio St. 454, 458:

" 'Hatred, ill will, or actual malice toward the injured party is not a necessary ingredient of legal malice as applied to torts, nor is it necessary that the act complained of proceed from a spiteful, malignant, or revengeful disposition. If *it be wrongful,* unlawful *and intentional, and the natural and probable result of the act is to accomplish the injury complained of, malice is implied.' "* (Emphasis added.)

On the question of punitive damages in an action for the wrongful taking of goods, in an annotation in 54 A. L. R. 2d 1379, Section 5(a), the rule is again found:

"In some cases it has appeared that the creditor seized the plaintiff's property by means of legal process, taking and withholding it from the plaintiff on the pretext of enforcing the debt. Where it was proved that there was malice, insult, *wilful* and wanton *disregard of the plaintiff's rights*, or the like, exemplary or punitive damages have been allowed.

"Thus, in *Kentucky Trust & Security Co.* v. *Ringo* (1911), 145 Ky. 190, 140 S. W. 154, the court stated that if the jury believed that the property was taken from the plaintiff without right or lawful excuse, under the circumstances detailed by her in her testimony, it would be warranted in awarding not only damages she actually sustained, but further damages by way of 'smart money.' Plaintiff testified that an agent of the defendant came to her house, accompanied by a constable, and over her objection took her furniture, loaded it in a wagon, and put it in a public storage room, refusing to return it to her upon her request, even though she told him she did not owe his company anything. After a lapse of eight or ten days, she again requested her furniture, and was allowed to take it after paying the storage charges and hauling charges. The jury found that the defendant had invaded the plaintiff's home without right, punitive damages therefore being authorized." (Emphasis added.)

Finally, as authority for the position I take that Columbus Finance is responsible in punitive damages for the intentional and wrongful seizure of the Howards' automobile under a writ of execution by the employees of Columbus Finance, I find support in the classic conclusion of Judge Learned Hand in his opinion in the case of *Nelson* v. *American West African Line* (1936), 86 F. 2d 730, that:

"A principal is not chargeable with wilful acts, intended by the agent only to further his own interest, not done for the principal at all. * * * Restatement of Agency,

Section 235. But motives may be mixed; men may vent their spleen upon others and yet mean to further their master's business; *that meaning, that intention is the test.*" (Emphasis added.)

That meaning, that intention, radiates from the record before us as even clearer than the manifestation of the intentional wrongfulness of the execution. The faithfulness of the Columbus Finance agent to its interest may, conceivably, provide some assuagement for his tort.

Accordingly, I would reverse the Court of Appeals on the question of punitive damages and reinstate the judgment of the Municipal Court on that issue.

HERBERT, J., concurs in the foregoing dissenting opinion.