BAXTER TRAVENOL LABORATORIES, INC., et al., Plaintiffs,

v.

William E. LeMAY, et al., Defendants.

No. C-3-80-362.

United States District Court, S. D. Ohio, W. D.

March 12, 1982.

G. David Schiering, William H. Blessing, Cincinnati, Ohio, for plaintiffs.

Roger F. Lewis, Deerfield, Ill., Jon Sebaly, Dayton, Ohio, John Gall, Columbus, Ohio, for defendants.

DECISION AND ENTRY ON PENDING MOTIONS; PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS SUSTAINED AS A MOTION TO DISMISS, WITH RESPECT TO COUNTERCLAIMS OF LeMAY, SULLIVAN, MIXON AND GALLAHER, AND TO THIRD CLAIM FOR RELIEF OF AMENDED COUNTERCLAIM BY PHOENIX GLOVE COMPANY; PLAINTIFFS' MOTION TO BIFURCATE BY SEVERING DEFENDANTS' COUNTERCLAIMS FOR SEPARATE TRIAL SUSTAINED; DEFENDANT PHOENIX GLOVE COMPANY'S MOTION TO SEVER PLAINTIFFS' CLAIMS FOR SEPARATE AND SECONDARY TRIAL OVERRULED

RICE, District Judge.

This matter is before this Court upon three motions, to wit:

(1) Plaintiffs' motion for a judgment on the pleadings, pursuant to Fed.R. Civ.P. 12(c), with respect to the counterclaims of Defendants William E. LeMay, John Joseph Sullivan, Grover C. Mixon, Edward W. Gallaher, and to the Third Claim for Relief set forth in the amended counterclaim of Defendant Phoenix Glove Company (doc. # 142);

(2) Plaintiffs' motion to bifurcate the claims by severing Defendants' counterclaims for separate trial, pursuant to Fed.R.Civ.P. 42(b) (doc. # 146); and

(3) Defendant Phoenix Glove's motion to sever Plaintiffs' claims for a separate and secondary trial, pursuant to Fed. R.Civ.P. 42(b) (doc. # 152).

I. PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS IS SUSTAINED, AS A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiff's complaint in this case alleges, *inter alia*, that Defendants are guilty of theft of trade secrets and of breaching their fiduciary duties and employment contracts with the Plaintiffs. Upon answering, the individual Defendants counterclaimed (docs. 17, 18, 19 & 22), as did Phoenix Glove (in its counterclaim and amended counterclaim, docs. 16 & 96), alleging that Plaintiffs had instituted the lawsuit "maliciously, falsely and without probable cause." Plaintiffs filed answers to said counterclaims (docs. 33–37, 105), denying the allegations and ultimately moved for a judgment on the pleadings with respect to the counterclaims, pursuant to Rule 12(c).

Defendants essentially allege that, by their bringing suit, Plaintiffs are committing the torts of malicious prosecution and abuse of process. Plaintiffs contend that, as a matter of law, Defendants are bringing such an action prematurely. As ancillary claims to a diversity action, the resolution of this question is, of course, governed by Ohio law. *General Ins. Co. v. Lowry*, 570 F.2d 120 (6th Cir. 1978).

Under Ohio law, it is well settled that in order to bring an action for malicious prosecution, the prosecution of a civil proceeding must be at an end *and* must

terminate in favor of the person bringing the malicious prosecution claim. *See, Levering v. National Bank of Morrow County*, 87 Ohio St. 117, 100 N.E. 322 (1912); *Avco Delta Corp. v. Walker*, 22 Ohio App.2d 61, 258 N.E.2d 254 (Franklin Cty. 1969); *Sorin v. Board of Education*, 464 F.Supp. 50, 52 (N.D.Ohio 1978). A case allegedly to the contrary (i.e., holding that the prior proceedings need not terminate) cited by Defendants, *Fortman v. Rottier*, 8 Ohio St. 548 (1858), is clearly, and has been regarded as, a wrongful attachment case, *not* a malicious prosecution case. *Id.* at 552; *see also, Columbus Finance, Inc. v. Howard*, 42 Ohio St.2d 178, 182 n.*, 327 N.E.2d 654, 657 n.* (1975). Since Defendants have not, and could not, allege that the prior proceeding had terminated in their favor, their malicious prosecution counterclaim is inadequately pleaded.

■ Defendants also counterclaim on the basis that Plaintiffs' bringing of suit constitutes an abuse of process. There is, apparently, a conflict of authority under Ohio law, on whether the requisites for bringing suit on the latter theory differ from the aforementioned requisites for bringing suit under the malicious prosecution theory. *Cf. Delk v. Colonial Finance Co.*, 118 Ohio App. 451, 194 N.E.2d 885 (Hamilton Cty. 1963), *appeal dismissed*, 175 Ohio St. 248, 193 N.E.2d 153 (1963) (Ohio law makes no distinction between two torts) *with Avco Delta Corp. v. Walker, supra* (Ohio law *does* make a distinction, and prior proceeding need not terminate to bring suit for abuse of process). Said conflict need not be resolved by this Court, however, since, in any event, Defendants do not allege sufficient facts to bring their action under an abuse of process theory. The *Avco Delta Corp.* decision succinctly stated the difference between the two torts:

> An action for abuse of process differs from an action for malicious prosecution in that the latter is concerned with maliciously causing process to issue, while the former is concerned with the improper use of process after it has been issued.

22 Ohio App.2d at 66, 258 N.E.2d at 257 (quoting 1 Am.Jur.2d *Abuse of Process*, § 2 at 250–51 (1962)). Here, Defendants *do* allege that Plaintiffs maliciously caused process to issue (i.e., maliciously brought suit), but allege no facts to indicate that process was improperly used *after* it was issued. Accordingly, under the present state of the pleadings, Defendants cannot bring suit for the tort of abuse of process.

■ Finally, Defendants contend that their counterclaims also sound in unfair competition, a cause of action, they argue, not subject to the strictures of the aforementioned torts. Defendants' final argument must be rejected for two reasons. First, said counterclaims do not specifically allege facts to bring their action under any form of an "unfair competition" theory. Indeed, the Third Count of the amended counterclaim of Phoenix Glove is only captioned "Malicious Prosecution and Abuse of Process" (doc. 96, p. 11). Second, Defendants do not cite for this Court any Ohio statute or case law suggesting that the acts which *are* alleged would be considered "unfair competition." The case cited by Plaintiffs, *Jenn-Air Corp. v. Modern Maid Co.*, 499 F.Supp. 320, 333 (D.Del.1980), *aff'd without opinion*, 659 F.2d 1068 (3rd Cir. 1981), is inapposite, since that decision involved 28 U.S.C. § 1338(b), which grants federal courts jurisdiction to join unfair competition actions with claims under the copyright, patent, plant variety protection or trademark laws. As already indicated, Plaintiffs' complaint is based on diversity jurisdiction and does not purport to rely on the "laws" mentioned in § 1338(b). Moreover, one Ohio case which does suggest that malicious litigation can be construed as unfair competition, *Gehring Co. v. McCue*, 23 Ohio App. 281, 154 N.E. 171 (Cuyahoga Cty.1926), apparently involved a charge of patent infringement, which had proved to be false. *See, Kemart Corp. v. Printing Arts Research Laboratories, Inc.*, 146 F.Supp. 21, 23 (S.D.Cal.1956), *aff'd*, 269 F.2d 375 (9th Cir.), *cert. denied*, 361 U.S. 893, 80 S.Ct. 197, 4 L.Ed.2d 151 (1959) (discussing *McCue* decision). This reading of *McCue* suggests that, like the aforementioned torts, the litigation being sued upon must have terminated. For these reasons, the counterclaims inadequately plead an "unfair competition" cause of action.

While, pursuant to the language of Rule 12(c), the "pleadings are closed" (Plaintiffs having filed answers to said counterclaims), and thus a Rule 12(c) motion is ripe for decision, this Court nevertheless deems it appropriate to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A Rule 12(c) motion would require an examination of the counterclaims, and answers thereto, in this case, and "at least theoretically require [ ] some scrutiny of the merits of the controversy." *McIntosh v. Garofalo*, 367 F.Supp. 501, 503 (W.D.Pa.1973); 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1369 (1969). In contrast, a Rule 12(b) motion is typically only concerned with an examination of the allegations in the pleading filed by the non-moving party. Having determined, by *only* examining the allegations in the counterclaims, that Defendants' causes of action were brought prematurely, the Court deems dismissal of the same appropriate for failure to state a claim.

Defenses under Rule 12(b) can be raised in a Rule 12(c) motion. *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979). Accordingly, Plaintiffs' motion for a judgment on the pleadings is hereby sustained as a motion for failure to state a claim upon which relief can be granted.

## II. PLAINTIFFS' MOTION TO BIFURCATE THE CLAIMS BY SEVERING DEFENDANTS' COUNTERCLAIMS FOR SEPARATE TRIAL IS SUSTAINED; DEFENDANT PHOENIX GLOVE'S MOTION TO SEVER PLAINTIFFS' CLAIMS FOR A SEPARATE AND SECONDARY TRIAL IS OVERRULED.

As indicated above, Plaintiffs allege in their complaint, *inter alia*, that Defendants are liable for misappropriation and conversion of trade secrets, breach of contract, and breach of fiduciary duty. The individual Defendants counterclaimed for malicious prosecution (said actions are now dismissed, *supra*), as did Defendant Phoenix Glove, and Phoenix Glove also counterclaimed for federal and Ohio antitrust law violations, and sued David Warnick for defamation. Warnick, in turn, has himself sued Phoenix Glove for breach of contract. Specifically, Phoenix Glove alleges that Defendants have violated Sections One and Two of the Sherman Act, 15 U.S.C. §§ 1–2, and Section Two of the Clayton Act, 15 U.S.C. § 13. As *part* of these alleged antitrust violations, Phoenix Glove alleges that Defendants conspired to file a "meritless" lawsuit (doc. 96, First Claim for Relief, ¶¶ 21, 23.A.).

Plaintiffs have now moved, pursuant to Fed.R.Civ.P. 42(b),[1] to bifurcate the claims by holding a separate trial for Phoenix Glove's counterclaims, as well as Warnick's counterclaims against Phoenix glove. Plaintiffs wish to try the claims for relief raised in their complaint first. Defendant Phoenix Glove purports to oppose any motion to bifurcate, but it, too, has moved for a separate trial on the claims, contending that the antitrust counterclaim should be tried first.

■ Separation, pursuant to Rule 42(b), of issues raised in a complaint and counterclaim, with sequential trials thereon, is a matter within the sound discretion of the trial court. *Parmer v. National Cash Register Co.*, 503 F.2d 275, 277 (6th Cir. 1974) (per curiam); *Torin Corp. v. Philips Industries, Inc.*, No. C–3–80–021 (S.D.Ohio, Dec. 11, 1980), slip op. at 2. The factors to be balanced against the convenience and econ-

---

1. (b) Separate Trials. The Court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States. Fed.R.Civ.P. 42(b).

While the parties in this action have apparently used the terms "separate" and "severance" interchangeably, it is proper, under Rule 42(b), to only use "separate." *See, Pearl Brewing Co. v. Jos. Schlitz Brewing Co.*, 415 F.Supp. 1122, 1132 n.4 (S.D.Tex.1976); 9 C. Wright & A. Miller, *supra*, § 2387 (1971).

omy of one trial include the complexity of legal theories and factual proof, the risk of jury misunderstanding, and whether the advanced disposition of issues in the first trial will dispose of or simplify the issues to be raised in the second trial. *Kosters v. Seven-Up Co.*, 595 F.2d 347, 356 (6th Cir. 1979); *Torin Corp., supra.* As the respective motions of the parties for separation are but two sides of the same coin, they will be considered together.

▮ The greater part of the parties' memoranda on these motions deals with the desirability—or lack thereof—of addressing Defendants' antitrust counterclaim in a second trial. Specifically, Plaintiffs argue that the "sham litigation" component of Defendants' counterclaim requires that the allegedly "meritless" litigation (i.e., Plaintiffs' complaint) be tried first. These arguments will require this Court to briefly address the scope of the "sham litigation" doctrine in antitrust law, to the extent that it aids in the rulings on the motions for separate trials.[2]

The "sham litigation" doctrine is an exception to the immunity from liability under the antitrust laws established in a trio of Supreme Court cases: *Eastern Railroad Presidents Conf. v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); and *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). In *Noerr,* the Court held that Sherman Act liability could not be predicated on mere attempts to influence the passage or enforcement of laws by the legislature or the executive, even if that attempt had only an anticompetitive purpose. 365 U.S. at 135–40, 81 S.Ct. at 528–31. However, the *Noerr* Court also held that:

> [t]here may be situations in which a publicity campaign, ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually

nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified. *Id.* at 144, 81 S.Ct. at 533.

In *Pennington,* the Court held that attempts by coal operators and unions to influence the Secretary of Labor fell under the *Noerr* doctrine, even though such conduct was intended to eliminate competition. 381 U.S. at 669–70, 85 S.Ct. at 1592–93.

Finally, in *California Motor Transport,* the Court applied the *Noerr-Pennington* principles to efforts to influence judicial or administrative agencies, or to file proceedings in the same. Specifically, it was alleged in that case that defendants filed repetitive and baseless claims for the sole purpose of discouraging others to exercise their rights of petition to administrative agencies, by forcing others to defend said claims. 404 U.S. at 512, 92 S.Ct. at 612. The Court held that these allegations, if proven true, would fall within the "sham litigation" exception to *Noerr. Id.* The allegations indicated that the "real intent" of defendants' activities was to interfere directly with the business relationships of a competitor. *Id.*

Defendant herein alleges in its counterclaim that Plaintiffs, in their complaint, are pursuing baseless litigation intended to destroy a competitor. In other words, Defendant argues that suit can be brought under the "sham" exception to the *Noerr-Pennington* doctrine. The main point of contention between the parties is whether, and how, Plaintiffs' complaint, and the litigation pursuant to it, can be considered "baseless." Plaintiffs argue that litigation can only be considered "baseless" once it is terminated in favor of the party bringing the antitrust action. Defendants argue that litigation can be shown to be "baseless" before, or even without, it being terminated.

---

**2.** The Court's discussion of the "sham litigation" doctrine is thus for a quite narrow purpose, and, in so doing, the Court intimates no view as to the sufficiency of, or merits of, the antitrust allegations set forth in Defendant's counterclaim.

Although most of the recent caselaw concerning the "sham" exception has not specifically addressed this point, the weight of authority seems to fall on Plaintiffs' side. Analogizing the "sham" exception to the tort of malicious prosecution, many courts, including two within this Circuit, have held that termination of the litigation in favor of the antitrust plaintiff, while not a rigid requirement in all circumstances, is strong evidence, and probably dispositive of, the issue of the allegedly "baseless" nature of litigation. *See, e.g., Hahn v. Codding*, 615 F.2d 830, 841 & n.13 (9th Cir. 1980); *Mid-Texas Communications Systems, Inc. v. Amer. Tel. & Tel. Co.*, 615 F.2d 1372, 1383 (5th Cir.) *cert. denied*, 449 U.S. 912, 101 S.Ct. 286, 66 L.Ed.2d 140 (1980); *Sage Int'l, Ltd. v. Cadillac Gage Co.*, 507 F.Supp. 939, 947 (E.D.Mich.1981); *Chest Hill Co. v. Guttman*, No. C–1–79–240 (S.D.Ohio May 29, 1981), slip op. at 26–27. *Accord*, 1 P. Areeda & D. Turner, *Antitrust Law*, ¶ 203c (1978); Balmer, *Sham Litigation and the Antitrust Laws*, 29 Buff.L.Rev. 39, 65 (1980); Fischel, *Antitrust Liability for Attempts to Influence Government Action: The Basis and Limits of the Noerr-Pennington Doctrine*, 45 U.Chi.L.Rev. 80, 110 n.160 (1977). *See also, Taylor Drug Stores, Inc. v. Associated Dry Goods Corp.*, 560 F.2d 211, 213 (6th Cir. 1977) (per curiam) (successful state court suit was not a sham). Under this view of the "sham" exception, it would be more appropriate for Plaintiffs' complaint to proceed to trial first.

Some courts have also suggested that an appropriate analogy is to abuse of process, an analogy advanced by Defendant. *See, e.g., Ad Visor, Inc. v. Pacific Tel. & Tel. Co.*, 640 F.2d 1107, 1109 (9th Cir. 1981); *Sage Int'l, Ltd. v. Cadillac Gage Co., supra*, 507 F.Supp. at 947; Note, *Limiting the Antitrust Immunity for Concerted Attempts to Influence Courts and Adjudicatory Agencies: Analogies to Malicious Prosecution and Abuse of Process*, 86 Harv.L.Rev. 715

(1973); Balmer, *supra*, at 66. However, as suggested earlier in this opinion, the counterclaim, in its present state, does not set forth allegations that Plaintiffs abused process once same was issued, or engaged in other misconduct outside of the proper bounds of the litigation process. Hence, even if this analogy were useful to Defendant,[3] it does not seem appropriate to the case herein.

Several cases relied upon by Defendant do not negate these conclusions. For example, in *Mach-Tronics, Inc. v. Zirpoli*, 316 F.2d 820 (9th Cir. 1963), the Court of Appeals held that a trial court should not have stayed a federal court antitrust action, while awaiting the outcome of a stolen trade secrets case pending in state court. In passing, and without citation of authority, the Court stated that the Plaintiff's antitrust action could succeed even if the state court action did not prove to be baseless. *Id.* at 830. Similarly, the Court, in *Kobe, Inc. v. Dempsey Pump Co.*, 198 F.2d 416 (10th Cir.), *cert. denied*, 344 U.S. 837, 73 S.Ct. 46, 97 L.Ed. 651 (1952), held that even a successful patent infringement suit might violate the antitrust laws. *Id.* at 425. These cases present obvious factual differences from the instant litigation; for instance, the *Mach-Tronics* decision turned largely on the proper scope of the abstention doctrine, and did not involve two actions concurrently in one court. More importantly, the failure of the decisions, particularly *Mach-Tronics*, to cite, or distinguish, the *Noerr-Pennington* doctrine, renders them of somewhat limited precedential value. *See*, Fischel, *supra*, at 113.

Accordingly, while Defendant's antitrust counterclaim is not based *entirely* on the allegedly "sham" litigation, the Court deems it appropriate, in light of the above review of the *Noerr-Pennington* doctrine, to permit Plaintiffs' complaint to go to trial

---

**3.** Even one commentator, heavily relied upon by Defendant, suggests that the analogy to abuse of process should be applied "cautiously," Balmer, *supra*, at 68, and that, in light of case law, the better course is to determine whether the allegedly "sham" litigation is baseless. *Id.* Allowing Plaintiffs' complaint to go

first, in order to aid in the determination of whether said complaint is baseless.[4]

While not extensively discussed in the parties' memoranda, application of the other factors relevant to determination of Rule 42(b) motions also points towards this conclusion. It is likely that breach of trade secret litigation and antitrust litigation will require significantly different factual proof. The latter claim, for example, will probably involve the introduction of quite broad economic evidence concerning allegedly monopolistic practices, relevant product markets, and the like. Bifurcation is appropriate when claims involve proof of different facts. *Broadcast Music, Inc. v. CBS, Inc.,* 55 F.R.D. 292, 297 (S.D.N.Y.1972) (separation of contract and antitrust claims). The presentation of such divergent legal theories and factual evidence in one trial could, of course, lead to jury confusion. In addition, Defendant has acknowledged (doc. # 152, pp. 12–13) that discovery for the antitrust counterclaim cannot be completed until the Sixth Circuit rules on this Court's decision of May 20, 1981, permitting Warnick to claim the attorney-client privilege when asked certain questions by Defendant. That decision, on interlocutory appeal, *see,* 514 F.Supp. 1156 (S.D.Ohio 1981), has not been ruled upon, on appeal, at this writing.

Accordingly, the Court finds, based on relevant legal authority and the facts of this particular case, that a separation, for separate trials, pursuant to Rule 42(b), of Plaintiffs' claims and Defendants' antitrust counterclaims, is appropriate. However, the Court will reserve ruling at this time on *which* trial the counterclaim by Warnick should be presented.

## III. CONCLUSION

In summary,

(1) Plaintiffs' motion for a judgment on the pleadings is sustained, as motion

---

to trial first, of course, will aid in such a determination.

**4.** The court thus accepts, as have virtually all other courts, and commentators, Defendant's position that a *single* lawsuit can give rise to antitrust liability, and *repetitive* litigation is not

for failure to state a claim upon which relief can be granted. The counterclaims of the Defendants LeMay, Sullivan, Mixon, Gallaher and the third claim for relief set forth in the amended counterclaim of the Defendant Phoenix Glove Company are dismissed;

(2) Plaintiffs' motion for separate trials is sustained, and

(3) Defendants' motion to separate Plaintiffs' claims for a secondary trial is overruled.

The timing of successive trials will be further discussed at the conference call scheduled for Friday, April 2, 1982, at 4:30 p. m.

---

necessary. *See, e.g., Sage Int'l Ltd., supra,* 507 F.Supp. at 944–46; *Technicon Medical Information Systems Corp. v. Green Bay Packaging, Inc.,* 480 F.Supp. 124, 127–28 (E.D.Wis.1979); Fischel, *supra,* at 110.