DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Time Warner Cable,[1] appeals the decision of the Wayne County Court of Common Pleas. Appellees, Frank Pavkov, Sr., Carol Pavkov, Frank Pavkov, Jr. and Patricia Pavkov, cross-appeal. We affirm.
 I.
In the mid-1980s, Mr. Pavkov, Sr. became the owner of four lots in Chippewa Township of Wayne County. In 1987, Northern Ohio Cable Company ("Northern") laid subterranean cable which encroached on Mr. Pavkov, Sr.'s property, as well as constructed an above ground pedestal on his property to direct or amplify the signals along the cable. The parties dispute the date on which Northern's cable lines were purchased by Time Warner Cable, appellants asserting that the purchase of assets occurred in October of 1997, and appellees (cross-appellants) assert that it occurred early in 1990. Hence, we will refer to the company who operated the cable lines on the Pavkovs' property as Northern in this section of our opinion, resolving the matter as one of the assigned errors below.
Mr. Pavkov, Jr. purchased one of the lots from the Franklin Pavkov Construction Company (owned by Mr. Pavkov, Sr.) on July 12, 1990. While constructing on the property, Mr. Pavkov, Jr. severed one of the Northern cables which lay buried on his property. Northern was notified and repaired the break. Approximately one year later, Mr. Pavkov, Jr. decided to construct a swimming pool in his backyard, during construction the cable was severed once again. Again, Northern was notified and repaired the damage.
In 1996, Mr. Pavkov, Sr. began construction on one of his remaining lots. He requested that Northern mark the location of the buried cable, which a Northern representative did accomplish. However, although one cable line was marked, another, which also ran through the property, was erroneously left unmarked. During construction, Mr. Pavkov, Sr. hand dug around the marked cable, but the unmarked cable was severed and had to be repaired by Northern. In 1996, Northern also dug a trench through the orchard on Mr. Pavkov, Jr.'s property, leading to a box installed on Mr. Pavkov, Sr.'s property. The Pavkovs complained to Time Warner about the intrusion on their property, even sending a letter in May of 1997. In 1997, Doylestown Cable installed cable lines, traversing the Pavkovs' property.
On February 5, 1998, the Pavkovs filed a complaint in the Wayne County Court of Common Pleas alleging that Time Warner and Doylestown Cable had trespassed on their property. On March 22, 1999, Doylestown Cable's motion for directed verdict was granted in regard to Time Warner's cross-claim against it — Doylestown having already settled the Pavkovs' claims against it. The case was tried to the bench on December 14, 1998. In a verdict journalized on March 22, 1999, the trial court found in favor of the Pavkovs. The trial court found that Mr. Pavkov, Sr.'s damages were in the amount of $5,000 for each of the three lots that he owned which were trespassed upon (a total of $15,000) and that Mr. Pavkov, Jr.'s damages for the one lot that he owned and which was trespassed upon were $5,000. This appeal followed.
 II.
Time Warner Cable asserts four assignments of error. The Pavkovs cross appeal, asserting two assignments of error. We will discuss each in turn, consolidating the Pavkovs' assignments of error to facilitate review.
 A. Time Warner's Assignments of Error 1. First Assignment of Error
THE TRIAL COURT ERRED IN FINDING THAT TIME WARNER WAS A TREPASSER [sic] RATHER THAN A LICENSEE.
Time Warner argues that the trial court erred in finding that it was a trespasser rather than a licensee. Essentially, Time Warner asserts that the trial court acted against the manifest weight of the evidence and misapplied the applicable law. We disagree.
When the manifest weight of the evidence is challenged, "[a]n appellate court conducts the same manifest weight analysis in both criminal and civil cases." Ray v. Vansickle (Oct. 14, 1998), Lorain App. Nos. 97CA006897/97CA006907, unreported, at 3.
 "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
"Unlike determinations of fact which are given great deference, questions of law are reviewed by a court de novo." NationwideMut. Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107,108.
One is a licensee if he "goes upon lands of another by permission and acquiescence [of the landowner] for [the licensee's] own pleasure or convenience and not by invitation[.]" Hannan v. Ehrlich
(1921), 102 Ohio St. 176, 185. "[I]mplied consent may be interpreted from acquiescence to continued use of the property by the public."Easterling v. Am. Olean Tile Co., Inc. (1991), 75 Ohio App.3d 846,853. However, "[a] trespasser is one who, without express or implied authorization, invitation or inducement, enters private premises purely for his own purposes or convenience." McKinney v.Hartz Restle Realtors, Inc. (1987), 31 Ohio St.3d 244, 246.
Construing the evidence in a light most favorable to sustaining the trial court's judgment, the Pavkovs initially mistakenly believed that there was an easement on their property, allowing the cables to run across their property and allowing necessary service to the cables and other equipment to be performed. When they realized that such an easement did not exist, they contacted Time Warner and demanded that such an easement be purchased for the continued use of their property. Moreover, the cable had only been in place since 1987. "To acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." Grace v. Koch (1998), 81 Ohio St.3d 577, syllabus. We determine that, due to the length of time at issue here, Time Warner did not possess an easement by prescription. See PennsylvaniaRd. Co. v. Donovan (1924), 111 Ohio St. 341, paragraph one of the syllabus. Furthermore, the Pavkovs informed Time Warner of its trespass and asserted their property rights, rather than acquiescing or tolerating Time Warner's presence on the Pavkovs' property, which it had no apparent legal right to enter upon. Hence, we conclude that the trial court did not err in determining that Time Warner was a trespasser, as the Pavkovs did not permit or tolerate the presence of the cable, but rather, complained when they learned of the trespass. Furthermore, after thoroughly reviewing the record we cannot say that the trial court's conclusion was against the manifest weight of the evidence as the trial court heard the witnesses, had the opportunity to adjudge their credibility, and could have concluded that the Pavkovs never acquiesced to the presence of the cable lines from the evidence presented. Time Warner's first assignment of error is overruled.
 2. Second Assignment of Error
IT WAS AN ERROR FOR THE TRIAL COURT TO CONCLUDE, BOTH FACTUALLY AND AS A MATTER OF LAW, THAT NORTHERN OHIO WAS A SUBSIDIARY OF TIME WARNER CABLE.
Time Warner asserts that the trial court erred, as a matter of law, in determining that Northern was a subsidiary of Time Warner. Moreover, Time Warner asserts that the evidence did not support the trial court's conclusion, essentially challenging the manifest weight of the evidence. We disagree.
Our standard of review is the same as that enunciated above.
In order for the parent corporation to be liable for the wrongs committed by a subsidiary corporation one must show:
 (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.
 Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, paragraph three of the syllabus. However,
 [w]here there is merely a sale of a corporation's assets, the buyer corporation is not liable for the seller corporation's tortious conduct unless one of the following four exceptions applies:
(1) the buyer expressly or impliedly agrees to assume such liability;
 (2) the transaction amounts to a de facto consolidation or merger;
 (3) the buyer corporation is merely a continuation of the seller corporation; or
 (4) the transaction is entered into fraudulently for the purpose of escaping liability.
 (Emphasis original.) Flaugher v. Cone Automatic Machine Co.
(1987), 30 Ohio St.3d 60, 62.
In a deposition, Tod R. Dean, the director of plant engineering at Time Warner, testified that Time Warner purchased Northern's assets in early 1990. At trial, Mr. Dean testified that the purchase took place in October of 1997 and was impeached with the statement at his deposition. Furthermore, Mr. Dean testified that Time Warner had expressly assumed the tort liability of Northern. The trial court had the opportunity to view Mr. Dean and adjudge the credibility of his statements. Hence, viewing the testimony in a light most favorable to sustaining the trial court's verdict, we cannot conclude that the trial court erred in concluding that Time Warner owned the cable lines on the Pavkovs' property or assumed Northern's liability for the trespass of the cable lines.
In its judgment entry, the trial court referred to Northern as a subsidiary of Time Warner. Although the term subsidiary may not have been technically correct, the trial court did not err because Time Warner itself owned the cable lines during most of the period in question and assumed Northern's liability for the portion of the trespass which occurred under its ownership of the cable lines.
 Intentional trespassers are within that class of less-favored wrongdoers. For example, under the Restatement of Torts 2d, intentional conduct is an element of trespass: "One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally (a) enters land in the possession of the other or causes a thing or a third person to do so * * *." Restatement of Torts 2d 277, Section 158.
(Emphasis and footnote omitted.) Baker v. Shymkiv (1983), 6 Ohio St.3d 151,153. Hence, we cannot conclude that the trial court erred as a matter of fact or law in finding Time Warner liable for the intentional trespass on the Pavkovs' property by its cables. Time Warner's second assignment of error is overruled.
 3. Third Assignment of Error
THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT PLAINTIFF'S CLAIMS WERE NOT BARRED BY THE DOCTRINE OF LACHES.
Time Warner avers that the trial court erred as a matter of law by finding the Pavkovs' claims were not barred by the doctrine of laches. We disagree.
As noted above, we review questions of law de novo.
 [T]he elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party. State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections (1995), 74 Ohio St.3d 143, 145, 656 N.E.2d 1277, 1279. Prejudice is not inferred from the mere lapse of time and "`in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim.'" Stevens v. Natl. City Bank (1989), 45 Ohio St.3d 276, 285, 544 N.E.2d 612, 621, quoting Smith v. Smith (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113, paragraph three of the syllabus.
 State ex rel. Mallory v. Pub. Emp. Retirement Bd. (1998), 82 Ohio St.3d 235, 244.
Time Warner asserts that it has been prejudiced by the Pavkovs' delay in bringing suit because they lack the information that Northern may have had at some point regarding when the cable lines were installed. We conclude that this assertion does not establish material prejudice because there is no evidence that Northern had such records or that the passage of time due to the Pavkovs' inaction rather than Time Warner's neglect in failing to obtain complete records regarding property which they were purchasing harmed Time Warner's defense. Accordingly, Time Warner's third assignment of error is overruled.
 4. Fourth Assignment of Error
THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT PLAINTIFFS DID NOT WAIVE THEIR RIGHT TO BRING A TRESPASS ACTION.
Time Warner asserts that the trial court erred as a matter of law by concluding that the Pavkovs did not waive their right to complain of its trespass. We disagree.
Our review is de novo as to questions of law.
"A waiver is a voluntary relinquishment of a known right."Chubb v. Ohio Bur. of Workers' Comp. (1998), 81 Ohio St.3d 275,278. In order to waive one's right, one must have the opportunity to choose between enforcing and relinquishing the right. Id. at 279. Furthermore, a waiver may be enforced by an entity that had a duty to perform and changed its position in reliance on the waiver. Id.
The Pavkovs were unaware of their right to force Time Warner to remove the cable lines until they realized that Time Warner did not have an easement permitting their placement. Time Warner purchased the cable lines after they were installed and continued to service and use them after the Pavkovs objected to their presence, demanding that an easement be purchased. We conclude that no waiver is apparent and, accordingly, that the trial court did not err in concluding that no waiver occurred because the Pavkovs never relinquished a known right and Time Warner did not show that it changed its position in reliance on the Pavkovs' alleged waiver. Moreover, Time Warner avers that the Pavkovs waived their claim of trespass by declining to tear out the cable lines. We decline to hold that refusing to interrupt cable television service to most of one's neighbors constitutes waiver. Hence, Time Warner's fourth assignment of error is overruled.
 B. The Pavkovs' Assignments of Error First Assignment of Error
THE TRIAL COURT ERRED IN CALCULATING DAMAGES RESPECTING FRANK PAVKOV, JR.'S PROPERTY.
 Second Assignment of Error
THE COURT ERRED BY FAILING TO AWARD PUNITIVE DAMAGES AND ATTORNEY FEES TO THE PAVKOVS.
The Pavkovs assert, in their cross-appeal, that the trial court erred in its calculation of damages, essentially arguing that the court's damage award was against the manifest weight of the evidence. Further, the Pavkovs assert that the trial court erred by failing to award them punitive damages and attorney fees. We disagree.
"[T]he determination of damages [is] a question for the jury and the court of appeals [is] not at liberty to substitute its judgment for that of the finder of fact." Moskovitz v. Mt. SinaiMed. Ctr. (1994), 69 Ohio St.3d 638, 655. Where the verdict of the finder of fact is supported by competent, credible evidence, it is not against the manifest weight of the evidence. Seeley v.Rahe (1985), 16 Ohio St.3d 25, 26.
Pursuant to the former R.C. 2315.21:[2]
 (B) * * * [P]unitive or exemplary damages are not recoverable from a defendant in question in a tort action unless both of the following apply:
 (1) The actions or omissions of that defendant demonstrate malice, aggravated or egregious fraud, oppression, or insult * * *;
 (2) The plaintiff in question has adduced proof of actual damages that resulted from actions or omissions as described in division (B)(1) of this section.
(C) * * *
* * *
 (3) In a tort action, the burden of proof shall be upon a plaintiff in question, by clear and convincing evidence, to establish that he is entitled to recover punitive or exemplary damages.
 Moreover, "[i]t is an established principle of law in this state that punitive damages may be awarded in tort cases involving fraud, insult or malice." Columbus Finance, Inc. v. Howard (1975), 42 Ohio St.2d 178, 183. Attorney fees are recoverable if punitive damages are proper. Id. Actual malice requires that the state of mind of the tortfeasor be one of hatred, ill will, revenge, retaliation, or a determination to vent his feelings upon other parties. Id.
at 184. Such a state of mind may be inferred from reckless, wanton, willful, or intentional acts. Id.
Mr. Pavkov, Sr. testified that the diminution in his property value was approximately $5,000 per lot. Mr. Pavkov, Jr. testified that his lot contained more cable lines, hence he asserted that the diminution in value of his lot was $10,000. Time Warner represented that the cable lines were to be abandoned within a few days of trial, alleviating the need for further maintenance or intrusion on the Pavkovs' property. The trial court found that $5,000 in damage had occurred to each lot and ordered the Pavkovs compensated accordingly. We cannot conclude that the trial court's decision was not based upon competent credible evidence as the cable lines were to be abandoned, and the finder of fact could have concluded that, with abandoned wires, rather than live wires requiring service, the damage to each lot was subsequently similar in value. Moreover, as the court had the opportunity to listen to the testimony concerning the diminution in the value of the property and adjudge its credibility, we defer to the finder of facts' judgment where, as here, some competent, credible evidence exists supporting its judgment.
Finally, we find no merit in the Pavkovs' assertion that punitive damages are appropriate. After reviewing the record, we conclude that the trial court did not err in concluding that there was not clear and convincing evidence adduced at trial showing that Time Warner trespassed out of a feeling of malice or intent to defraud. Hence, we conclude that the trial court did not err in declining to grant punitive damages to the Pavkovs. As an award of punitive damages was not appropriate, we conclude that neither was an award of attorney fees. Accordingly, the Pavkovs' two assignments of error are overruled.
 III.
Time Warner's four assignments of error are overruled, as are the Pavkovs' two assignments of error. The judgment of the Wayne County Court of Common Pleas is affirmed.[3]
 Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ________________________ WILLIAM G. BATCHELDER
FOR THE COURT WHITMORE, J. CONCURS
SLABY, J. CONCURS IN JUDGMENT ONLY
[1] Doylestown Cable TV was also a party to the original action but has not appealed.
[2] As the revised version of R.C. 2315.21 was declared unconstitutional by the Ohio Supreme Court in State ex rel. OhioAcademy of Trial Lawyers v. Sheward (1999), 86 Ohio St.3d 451, paragraph three of the syllabus, we conclude that the former version controls.
[3] On September 3, 1999, the Pavkovs filed a motion with this court asserting that Time Warner's appeal presented no reasonable question for review and, therefore, requesting this court to order Time Warner to pay the Pavkovs' reasonable expenses, including attorney fees and costs, which were incurred in this appeal pursuant to App.R. 15 and 23. We decline to do so as we conclude that Time Warner's appeal presented reasonable questions for review and was not frivolous.