### In re YOUNGSTOWN OSTEOPATHIC HOSPITAL ASSOCIATION, Debtor.

**Youngstown Osteopathic Hospital Association, Plaintiff,**

v.

**Pathways Center for Geriatric Psychiatry, Inc., et al., Defendants.**

Bankruptcy No. 99–40663.
Adversary No. 01–4098.

United States Bankruptcy Court, N.D. Ohio.

June 26, 2002.

---

Jeremy Gilman, Cleveland, OH, for plaintiff.

Michele Morris, Akron, OH, for defendants.

## MEMORANDUM OPINION

### WILLIAM T. BODOH, Chief Judge.

This cause is before the Court on the motion of Debtor/Plaintiff Youngstown Osteopathic Hospital Association ("YOH") for summary judgment. Defendant Pathways Center for Geriatric Psychiatry, Inc. ("Pathways Center") filed a memorandum in opposition, and YOH filed a reply. This is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(H). There has been no objection to this Court's consideration of the state law claims; this Court has pendant jurisdiction of state law claims in this adversary proceeding. The following constitutes the Court's findings of fact and conclusions of law pursuant to FED.R.BANKR.P. 7052.

## DISCUSSION

### A. Pleadings

YOH alleges that Pathways Center fraudulently transferred a total of Seven Hundred Thirty–Five Thousand Dollars ($735,000.00). YOH relies on the Ohio Uniform Fraudulent Transfer Act. YOH also alleges that Pathways Center civilly conspired to effectuate the transfers, and Pathways Center breached fiduciary duties upon authorizing the transfers.

Pathways Center argues that the transfers were not fraudulent because YOH did not establish intent to defraud on the part of Pathways Center, and that the transfers were not fraudulent because Pathways Center received a reasonably equivalent value for the money transferred. Pathways Center also argues that it was not insolvent as a result of the transfers, and so the transfers were not fraudulent. Pathways Center further argues that there is no evidence of civil conspiracy, and it did not breach any fiduciary duties.

YOH replied that since Pathways Center was not paying its bills as they came due, it was insolvent. YOH further argued that because Pathways Center was insolvent, the "trust fund doctrine" applies and that Pathways Center breached fiduciary duties to its creditors. YOH argues that there is evidence of a civil conspiracy.

### B. Facts

#### 1. Procedural History

Pathways Center, dwt Realty, Inc. ("dwt Realty"), RiverLake Heathcare, Inc. ("RiverLake"), Patricia Macejko ("Macejko") and Maryann Barnett ("Barnett") (collectively "Defendants") are all named Defendants in this adversary proceeding. Barnett and Macejko are sisters. (Urioste Dep., page 17, lines 18–20.) In a previously-filed adversary proceeding, Melissa Urioste was provided as the Rule 30(b)(6) deposition representative for all the above-listed Defendants. A copy of Urioste's deposition transcript was filed with the Court in an appendix to YOH's summary judgment motion. For the pending adversary proceeding, Shari Curl was provided as the Rule 30(b)(6) deposition representative for the above-listed Defendants. A copy of Curl's deposition transcript was filed with the Court in an appendix to YOH's summary judgment motion.

YOH sought to depose Barnett and Macejko, but in response to each question posed to them, they invoked their Fifth Amendment privilege against self-incrimi-

nation. Their answer to every question, other than to answer their names and addresses, was "[o]n the advice of counsel, I assert my rights under the Fifth Amendment of the Constitution of the United States." (See Barnett and Macejko Deps.)

YOH is the Debtor in this Chapter 11 case which was filed on March 11, 1999. YOH is an osteopathic hospital[1] which rented space to Pathways Center, a geriatric mental health care facility. Prior to filing a petition for relief under Title 11 of the United States Code, YOH entered into three agreements with Pathways Center. These agreements were an agreement of lease, a staffing agreement and a purchase of services agreement. In a previous adversary proceeding filed May 7, 1999 by YOH against Pathways Center, this Court found that Pathways Center breached the lease agreement. Pathways Center's own records showed that Pathways Center recognizes an indebtedness to YOH on the lease for over Two Million Nine Hundred Forty–Three Thousand Dollars ($2,943,-000.00). (Urioste Dep., page 112, lines 6–9.)

In the previous adversary proceeding, due to Pathways Center's breach, YOH moved this Court on May 11, 1999 for a preliminary injunction to enjoin Pathways Center from admitting new patients to the facility which Pathways Center rented from YOH. YOH served the preliminary injunction on the same day, and a hearing was scheduled for May 14, 1999.

### 2. The Transfers

On May 12, 1999, two days before the scheduled hearing, Pathways Center issued a check to RiverLake in the sum of Five Hundred Ten Thousand Dollars ($510,000.00). (Urioste Dep., page .134,

lines 7–13; page 138, lines 3–10; pages 144–45, lines 23–25, 1–6; Curl Dep., page 73, lines 6–10.) Barnett and Macejko were involved in writing this check. (Curl Dep., page 42, lines 4–22.) Barnett directed that the check be issued. (Urioste Dep., page 138, lines 7–10.) Barnett signed the check for Pathways Center. (Urioste Dep., page 134, line 1–6.) Barnett approved all checks. (Urioste Dep., page 132, lines 2–22.) Macejko was also a signatory on the same account. (Urioste Dep., page 133, lines 6–10.)

On June 25, 1999, Pathways Center issued a check to RiverLake in the sum of Two Hundred Twenty–Five Thousand Dollars ($225,000.00). (Curl Dep., page 43, lines 16–20.) Barnett signed the check for Pathways Center. (Curl Dep., pages 42–43, lines 25, 1–15.)

Several months after the two transfers occurred, a promissory note was created to memorialize the transfers. (Curl Dep., page 65, lines 23–25; page 67, lines 17–24.) The note was backdated. (Curl Dep., page 68, lines 14–18.) The note was in the amount of Five Hundred Sixty Thousand Dollars ($560,000.00). (Curl Dep., page 64, lines 21–24.)

A portion of the money transferred to RiverLake was then transferred to dwt Realty. (Urioste Dep., page 140, lines 13–16.) The money was used by dwt Realty to purchase a building. (Urioste Dep., page 135, lines 11–25.) The building is Pathways Center's new place of business. (Urioste Dep., pages 143–44, lines 20–25, 1–2.) The building is located at 945 Ambrose, East Liverpool, Ohio. (Curl Dep., page 44, lines 22–25.)

---

1. An osteopathic hospital is one "based on the theory that the body is capable of making its own remedies against disease and other toxic conditions when it is in normal structural relationship and has favorable environmental conditions and adequate nutrition." DORLAND'S ILLUSTRATED MED. DICTIONARY 1202 (28th ed. 1994).

### 3. Corporate Structure

Barnett and Macejko have always owned Pathways Center through a chain of corporations. (Curl Dep., page 26, lines 19–20.)

RiverLake is solely owned, in equal shares, by Barnett and Macejko. (Curl Dep., page 26, lines 2–5; page 23, lines 4–16.) Barnett and Macejko are the only officers and directors of RiverLake. (Curl Dep., page 23, lines 17–25.)

RiverLake has a wholly-owned subsidiary, Pathways, Inc. ("Pathways, Inc."). (Curl Dep., pages 25–26, lines 24–25, 1.) Pathways, Inc. is not an operating entity but is a holding company with no operations of its own. (Curl Dep., page 24, lines 10–13.)

Pathways, Inc. has a wholly-owned subsidiary, Pathways Center. (Curl Dep., page 25, lines 10–13.) Barnett and Macejko are the only directors of Pathways Center. (Curl Dep., page 24, lines 21–24.) They, along with Don Macejko, are the officers of Pathways Center. (Curl Dep., pages 24–25, lines 21–25, 1–9.)

There is a corporate entity, dwt Realty, that is outside the above-explained corporate structure. It is owned by Barnett, who is a fifty per cent (50%) holder, and by Don and Patricia Macejko, who together hold the other fifty per cent (50%). (Curl Dep., pages 45–46, lines 11–25, 1.)

### 4. Pathways Center's Finances

In fiscal year 1999, Pathways Center reported in its federal tax return that it sustained a net loss in the amount of Five Hundred Sixteen Thousand Three Hundred Sixty–Seven Dollars ($516,367.00). (Curl Dep., pages 77–78, lines 22–25, 1–5; see also Exhibit 6 to Curl Dep., 1999 Federal Tax Return.) In fiscal year 1998, Pathways Center reported in its federal tax return that it sustained a net loss in the amount of Nineteen Thousand Seven Hundred Twenty–Nine Dollars ($19,-729.00). (See Exhibit 7 to Curl Dep., 1998 Federal Tax Return.) In fiscal year 1997, Pathways Center reported in its federal tax return that it sustained a net loss in the amount of One Hundred Sixteen Thousand Eight Hundred Seventy–Seven Dollars ($116,877.00). (See Exhibit 8 to Curl Dep., 1997 Federal Tax Return.)

Pathways Center's own records indicate that it owed YOH Two Million Eight Hundred Forty–One Thousand Six Hundred and 45/100 Dollars ($2,841,600.45) as of April 30, 1999, and Two Million Nine Hundred Ninety–Three Thousand Four Hundred Ten and 48/100 Dollars ($2,993,-410.48) as overdue 90 days. (Curl Dep., page 85, lines 10–14; see also Exhibit 14 to Curl Dep., Pathways 5/97 – 4/99 Aged Payables.)

These amounts, however, are disputed in Curl's deposition. The following discussion took place regarding the amount owed to YOH:

Q . "Okay. So you're basically saying that Pathways kept faulty books?"

A. "No."

Q. "Did Pathways keep accurate books?"

A. "They kept books."

Q. "Did they keep accurate books?"

A. "They kept books."

Q. "Did they keep accurate books?"

A. "Yes, they did keep accurate—accurate their mentality, to their education."

(Curl Dep., pages 87–88, lines 17–25, 1.)

Pathways Center was unprofitable in fiscal years 1997, 1998, 1999, as well as 2000. (Curl Dep., page 96, lines 2–9.) The amount of the loss for fiscal year 2000 is unknown.

## ANALYSIS

### A. Standard of Review

The procedure for granting summary judgment is found in FED.R.CIV.P. 56(c), made applicable to this proceeding through FED.R.BANKR.P. 7056, which provides in part that

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is not appropriate if there is a material dispute over the facts, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Sixth Circuit has recognized that *Liberty Lobby, Celotex* and *Matsushita* effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). In responding to a proper motion for summary judgment, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street*, 886 F.2d at 1479 (quoting *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. 2505). The nonmoving party must introduce more than a scintilla of evidence to overcome the summary judgment motion. *Street*, 886 F.2d at 1479. It is also not sufficient for the nonmoving party merely to "show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

This line of cases emphasizes the point that when one party moves for summary judgment, the nonmoving party must take affirmative steps to rebut the application of summary judgment. Courts have stated that:

Under *Liberty Lobby* and *Celotex*, a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict, and if the opposing party is thereafter unable to demonstrate that he can do so, summary judgment is appropriate. "In other words, the movant could challenge the opposing party to 'put up or shut up' on a critical issue [and] . . . if the respondent did not 'put up,' summary judgment was proper."

*Fulson v. City of Columbus*, 801 F.Supp. 1, 4 (S.D.Ohio 1992) (quoting *Street*, 886 F.2d at 1478).

## B. Defendants Barnett and Macejko

■ Barnett and Macejko are foreclosed from providing evidence in their personal defenses because they failed to give discovery. In this case, Defendants Barnett and Macejko failed to answer deposition questions and instead offered as an answer to every question, other than to answer their names and addresses, "[o]n the advice of counsel, I assert my rights under the Fifth Amendment of the Constitution of the United States." (See Barnett and Macejko Deps.)

■ The Supreme Court does not disallow adverse inferences in civil actions when parties do not testify. *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).[2] "[T]he prevailing rule [is] that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them[.]" *Id.* This Court finds that Barnett and Macejko did not testify because to do so would have been adverse to their interests.

## C. Applicable Law

### 1. First Claim: Fraudulent Transfer

#### a. Statutory Analysis

Pursuant to the Ohio Uniform Fraudulent Transfer Act ("the Act"), Ohio Revised Code §§ 1336.01 *et seq.*, fraud is imputed to the debtor[3] when the statutory elements have been met. *See Comer v. Calim*, 128 Ohio App.3d 599, 606, 716 N.E.2d 245 (1st Dist.1998). Since the Ohio General Assembly made substantial amendments to the Act in 1990, a creditor need not prove the elements of common law fraud set forth by the Supreme Court of Ohio in *Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 277, 617 N.E.2d 1075 (1993), in order to succeed on a fraudulent transfer claim. A review of the statutes comprising the Act follows.

Under the Act, a transfer includes the "payment of money, release, lease, and creation of a lien or other encumbrance." OHIO REV.CODE ANN. § 1336.01(L) (Anderson 2002). An asset is the "property of a debtor," and property is "anything that may be the subject of ownership." OHIO REV.CODE ANN. § 1336.01(B) and (J). An asset is further defined pursuant to Ohio Revised Code § 1336.02(C)(1). An asset is not "property that has been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors, or that has been transferred in a manner making the transfer fraudulent under section 1336.04 or 1336.05 of the [Ohio] Revised Code." OHIO REV.CODE ANN. § 1336.02(C)(1) (Anderson 2002).

For a creditor whose claim against a debtor arose before the transfer took place, Ohio Revised Code § 1336.05 provides the statutory framework under which the creditor must prove its case. Ohio Revised Code § 1336.05(A) provides that a transfer is fraudulent when a debtor transfers assets, without receiving a reasonably equivalent value in exchange for the transfer, while the debtor is insolvent. Additionally, a transfer is fraudulent if the debtor, while insolvent, transfers assets to an insider. OHIO REV.CODE ANN. § 1336.05(B) (Anderson 2002); *see also*

---

2. YOH, in its amended summary judgment motion, incorrectly cites this case as 435 U.S. 308. The proper citation is 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810.

3. In the instant case, the Debtor under the Act is Pathways Center. While YOH is a debtor in a Chapter 11 proceeding in this Court, YOH is the creditor under the Act because Pathways Center owes YOH over Two Million Dollars ($2,000,000.00).

*Prudential Ins. Co. of Am. v. Sci. Park Ltd. P'ship,* 106 Ohio App.3d 823, 829, 667 N.E.2d 437 (8th Dist.1995). An insider includes, *inter alia,* directors, officers, partners, persons in control of a corporation, relatives and corporations of which the debtor is a director, officer or person in control. *See* OHIO REV.CODE ANN. § 1336.01(G).

Whether a debtor was insolvent at the time of the transfer is an essential element for determining liability under Ohio Revised Code § 1336.05. Under the balance sheet approach for determining whether a debtor was insolvent, the creditor need only prove that the debtor's liabilities exceeded the debtor's assets, excluding the value of preferences, fraudulent conveyances and exemption. *See* OHIO REV.CODE ANN. § 1336.02; *see also Prudential Ins. Co. of Am.,* 106 Ohio App.3d at 829–30, 667 N.E.2d 437.

A creditor may prove its claim of a fraudulent transfer independent of when the creditor's claim arose by satisfying the elements of Ohio Revised Code § 1336.04. There is a provision for actual fraud and a provision for constructive fraud. Regarding actual fraud, the Act provides for liability if the creditor proves that the debtor had the actual intent to defraud the creditor by transferring assets. *See* OHIO REV. CODE ANN. § 1336.04(A)(1) (Anderson 2002). The Act provides numerous statutory factors, also referred to as "badges of fraud," to consider in determining actual fraud. *See* OHIO REV.CODE ANN. § 1336.04(B)(1)–(11); *see also Aristocrat Lakewood Nursing Home v. Mayne,* 133 Ohio App.3d 651, 665, 729 N.E.2d 768 (8th Dist.1999). The listed "badges of fraud" are an unlimited set of relevant factors. *See* OHIO REV.CODE ANN. § 1336.04(B).

Ohio Revised Code § 1336.04(A)(2) permits claims for constructive fraud.[4] "Constructive fraud may exist even when the debtor has no actual intent to hinder, delay, or defraud an existing or future creditor." *Aristocrat Lakewood Nursing Home,* 133 Ohio App.3d at 667, 729 N.E.2d 768. The Act provides that a transfer is fraudulent if the debtor made a transfer of assets without receiving a reasonable value, and either (1) the debtor was engaged or about to be engaged in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to that business or transaction; or (2) the debtor intended to believe, or believed, or reasonably should have believed that he would become, insolvent. *See* OHIO REV.CODE ANN. § 1336.04(A)(2)(a) and (b).

Once the creditor proves the requisite elements, the debtor then has the opportunity to rebut the presumption of a fraudulent transfer by demonstrating that the transaction was made for value or consideration. *See* OHIO REV.CODE ANN. § 1336.08 (Anderson 2002). To determine "reasonably equivalent value," value must be measured from the standpoint of the debtor. *See Aristocrat Lakewood Nursing Home,* 133 Ohio App.3d at 665, 729 N.E.2d 768 (*citing SPC Plastics Corp. v. Griffith (In re Structurlite Plastics Corp.),* 193 B.R. 451, 456 (Bankr.S.D.Ohio, 1995)). Ohio Revised Code § 1336.03(A) explains that "value does not include an unperformed promise made otherwise than in the ordinary course of the business of the promisor to furnish support to the debtor or another person." OHIO REV.CODE ANN. § 1336.03(A) (Anderson 2002).

If the debtor fails to establish that the transaction was made for reasonably equivalent value, the creditor may obtain

---

4. YOH, in its amended summary judgment motion, incorrectly cites to this statute as § 1336.04(B). The proper citation is § 1336.04(A)(2)(a) and (b).

an "[a]voidance of the transfer" or "any other relief that the circumstances may require." Ohio Rev.Code Ann. § 1336.07(A)(1) and (A)(3)(c) (Anderson 2002). Furthermore, the court may order the party that committed the fraudulent transfer to pay attorney fees and punitive damages. *See Locafrance United States Corp. v. Interstate Distribution Servs., Inc.*, 6 Ohio St.3d 198, 202, 451 N.E.2d 1222 (1983).

### b. Conclusions of Law

There is no doubt that two transfers of assets occurred. The Court finds that both transfers were fraudulent pursuant to the Act.

■ The elements necessary to prove fraud under Ohio Revised Code § 1336.05(A) are a transfer of assets, while insolvent, without receiving a reasonably equivalent value. Under the balance sheet approach for determining whether a debtor was insolvent, the creditor need only prove that the debtor's liabilities exceeded the debtor's assets, excluding the value of preferences, fraudulent conveyances and exemption. *See* Ohio Rev.Code Ann. § 1336.02; *see also Prudential Ins. Co. of Am.*, 106 Ohio App.3d at 829–30, 667 N.E.2d 437. In this case, YOH proved through deposition testimony and exhibits attached thereto, that Pathways Center posted a net loss in the years 1997 through 2000. Its liabilities exceeded its assets.

Pathways Center argues that while it was unprofitable, its liabilities were not greater than its assets. Pathways Center also argues that a liability to Medicare in the amount of nearly One Million Nine Hundred Thousand Dollars ($1,900,000.00) is under appeal and that Pathways Center

expects its potential exposure to be only Two Hundred Thousand Dollars ($200,-000.00). The Court is not persuaded by this argument. This Court does not rely on parties' approximations of potential liability. This Court relies on facts in evidence which include Pathways Center's tax returns. In fiscal year 1999, Pathways Center reported in its federal tax return that it sustained a net loss in the amount of Five Hundred Sixteen Thousand Three Hundred Sixty–Seven Dollars ($516,-367.00). A review of the record shows that Pathways Center was insolvent at the time the transfers were made in 1999.

■ To determine "reasonably equivalent value," value must be measured from the standpoint of the debtor. *See Aristocrat Lakewood Nursing Home*, 133 Ohio App.3d at 665, 729 N.E.2d 768. In this case, Pathways Center twice transferred assets to RiverLake. Pathways Center argues that the transfers were made in order to purchase a building to house Pathways Center's geriatric mental health care facility. However, when Pathways Center transferred assets to RiverLake, Pathways Center did not receive any consideration in exchange. It is only when RiverLake transferred funds to dwt Realty that dwt Realty purchased the building for Pathways Center's use. It is not the transfers from RiverLake to dwt Realty that were made without consideration. It is the transfers from Pathways Center to RiverLake that were made without consideration. A postdated promissory note, in an amount that does not equal the two transfers, is not consideration. The Enronesque accounting that occurred among the corporate entities in this case continues to elude the Court.[5]

---

**5.** In her deposition, Curl describes intercompany transactions that do not reconcile. (Curl Dep., pages 64–74.) The multitude of

irreconcilable transactions perplexes this Court. For example, on page 72, Curl attempts to explain the relationship between the

There was no reasonably equivalent value transferred from RiverLake to Pathways Center. Even though all the involved corporate entities were under the control of the same principals, each is a separate corporate entity and shall be treated as such for the purpose of considering the circumstances surrounding the transfers from Pathways Center to RiverLake. Each intercompany transfer must be made for reasonably equivalent value. That did not occur in the instant case between Pathways Center and RiverLake. No reasonably equivalent value was exchanged as consideration.

Moreover, in its memorandum opposing summary judgment, Pathways Center admits the lack of consideration. "Accordingly, the transfer from Pathways Center to RiverLake and dwt Realty **was never envisioned to be a transfer for equivalent value** as all entities were owned by the same principals and was intended to comply with the Court's Order." (Def.'s Mem. in Opp'n to YOH's Mot. for Summ. J., page 4) (emphasis added). Pathways Center admits the lack of reasonably equivalent value.

As an aside, Pathways Center asserts the argument that the transfers were necessary to obtain a new location to house the geriatric mental health care facility, pursuant to this Court's order of April 20, 2000. Therefore, Pathways Center argues, the building was a reasonably equivalent value exchanged for the money that was eventually transferred to dwt Realty.

This argument is not well taken. The Court's order of April 20, 2000 found that Pathways Center breached the lease agreement with YOH. It did not direct Pathways Center to purchase a new building. Moreover, the transfers occurred in 1999, and the Court order was not issued until April 20, 2000. *See* April 20, 2000 Court order. The 1999 transfers could not have been in response to the 2000 order. Pathways Center received no reasonably equivalent value from RiverLake in 1999 for its two transfers.[6]

▬ Additionally, a transfer is fraudulent if the debtor, while insolvent, transfers assets to an insider. OHIO REV.CODE ANN. § 1336.05(B); *see also Prudential Ins. Co. of Am.*, 106 Ohio App.3d at 829, 667 N.E.2d 437. An insider includes, *inter alia*, directors, officers, partners, persons in control of a corporation, relatives and corporations of which the debtor is a director, officer or person in control. *See* OHIO REV.CODE ANN. § 1336.01(G). The Court has already determined that Pathways Center was insolvent at the time of the transfers. Referring back to the corporate structure, it is clear that Barnett and Macejko were insiders. Barnett and Macejko were the officers and directors, as well as shareholders of every corporate entity involved in this case, in one way or another. When Pathways Center transferred assets to RiverLake, it transferred assets to an insider because RiverLake is a corporation that both Barnett and Macejko controlled. Therefore, the two transfers

---

promissory note and outstanding intercompany receivables, but concludes on page 73 by saying "I don't know—I don't know. I don't know." (Curl Dep. page 73, lines 3–4.) It is for this reason that the Court focuses only on the two transfers described in the facts section of this opinion.

**6.** To further complicate matters, the amount RiverLake transferred to dwt Realty is only

Four Hundred Fifty–Two Thousand Dollars ($452,000.00). (Curl Dep., page 74, lines 8–13.) This leaves Fifty–Eight Thousand Dollars ($58,000.00) and the other transfer of Two Hundred Twenty–Five Thousand Dollars ($225,000.00) irreconciled. Even if the transfers were consideration for the building, there still remain unanswered accounting questions.

to RiverLake are fraudulent pursuant to Ohio Revised Code § 1336.05(B).

■ The Court also finds actual fraud in this case. The Act provides for liability if the creditor proves that the debtor had the actual intent to defraud the creditor by transferring assets. *See* OHIO REV.CODE ANN. § 1336.04(A)(1). The Act provides numerous statutory factors, or "badges of fraud," to consider in determining actual fraud. *See* OHIO REV.CODE ANN. § 1336.04(B)(1)–(11). Among the factors listed are whether or not the transfer was to an insider (§ 1336.04(B)(1)), whether the debtor retained control of the property transferred after the transfer (§ 1336.04(B)(2)), whether the transfer was disclosed or concealed (§ 1336.04(B)(3)), whether the debtor had been sued or threatened with suit (§ 1336.04(B)(4)), whether the debtor absconded (§ 1336.04(B)(6)), whether the value of consideration received by the debtor was reasonably equivalent to the value of the asset transferred (§ 1336.04(B)(8)) and whether the debtor was insolvent (§ 1336.04(B)(9)).

The Court has already found that the transfer was to an insider and that the debtor, YOH, therefore retained control. The Court also found that there was no exchange of reasonably equivalent value, and that the debtor, YOH, was insolvent. The Court also finds that Pathways Center had been sued and the first transfer was made two days before a scheduled hearing. Although the noncorporate defendant parties, Barnett and Macejko, in this action did not abscond, they did plead the Fifth Amendment in their depositions. The Court finds enough "badges of fraud" to determine that there was actual intent to defraud YOH pursuant to § 1336.04(A)(1) and (B).

The Court, although not necessary, also finds constructive fraud. The Act provides that a transfer is fraudulent if the debtor made a transfer of assets without receiving a reasonable value in exchange, and either (1) the debtor was engaged or about to be engaged in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to that business or transaction; or (2) the debtor intended to believe, or believed, or reasonably should have believed that he would become, insolvent. *See* OHIO REV.CODE ANN. § 1336.04(A)(2)(a) and (b). The Court has already found that there was no reasonable equivalent value exchanged for the transfers and that Pathways Center was insolvent. Thus, the Court easily concludes that Pathways Center committed constructive fraud pursuant to § 1336.04(A)(2)(b).

The debtor does have an opportunity to rebut the presumption of a fraudulent transfer by demonstrating that the transaction was made for value or consideration. *See* OHIO REV.CODE ANN. § 1336.08. In this case, the Court has already determined that Pathways Center's arguments regarding reasonably equivalent value are not well taken. Pathways Center failed to rebut the presumption of fraudulent transfers.

The Court finds that Pathways Center committed fraud pursuant to §§ 1336.05(A), 1336.05(B), 1336.04(A)(1) and 1336.04(A)(2).

### 2. Second Claim: Civil Conspiracy

#### a. Applicable Ohio Law

■ The case often cited in Ohio for the civil conspiracy standard is *Minarik v. Nagy,* 8 Ohio App.2d 194, 195–96, 193 N.E.2d 280 (8th Dist.1963). The Supreme Court of Ohio adopted the *Minarik* standard and defines civil conspiracy as " 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone,

resulting in actual damages.'" *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995) (*quoting LeFort v. Century 21–Maitland Realty Co.*, 32 Ohio St.3d 121, 126, 512 N.E.2d 640 (1987)) (citations omitted).

The first element of "a malicious combination of two or more persons to injure another[,]" *Kenty*, 72 Ohio St.3d at 419, 650 N.E.2d 863 (citations omitted), requires only a common understanding or design to commit an unlawful act. *See Gosden v. Louis*, 116 Ohio App.3d 195, 219, 687 N.E.2d 481 (9th Dist.1996) (citations omitted). It does not require a showing of an express agreement between or among defendants. *Id.* In the context of civil conspiracy, malice may be implied and is "'that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.'" *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1998) (quoting *Pickle v. Swinehart*, 170 Ohio St. 441, 443, 166 N.E.2d 227 (1960)). Malice can be "inferred from or imputed to a common design by two or more persons to cause harm to another by means of an underlying tort, and need not be proven separately or expressly." *Gosden*, 116 Ohio App.3d at 219–20, 687 N.E.2d 481 (citations omitted).

The second element of "in a way not competent for one alone," *Kenty*, 72 Ohio St.3d at 419, 650 N.E.2d 863 (citations omitted), is explained as: "if one person could lawfully commit an act, then that act committed by two or more persons cannot support a conspiracy claim, no matter how malicious the 'conspirators,' or how great the resulting 'injury.'" *Gosden*, 116 Ohio App.3d at 220, 687 N.E.2d 481 (citations omitted). This element stands for the proposition that there must be an underlying unlawful act which is actionable in the absence of a conspiracy. "An un-derlying unlawful act is required before a civil conspiracy claim can succeed." *Williams*, 83 Ohio St.3d at 475, 700 N.E.2d 859.

The third element of "resulting in actual damages[,]" *Kenty*, 72 Ohio St.3d at 419, 650 N.E.2d 863 (citations omitted), means there can be no successful civil conspiracy action if a plaintiff does not suffer damages from an underlying unlawful act. *See Gosden*, 116 Ohio App.3d at 220, 687 N.E.2d 481 (citations omitted). Damages, in order to be recoverable in a claim for civil conspiracy, "must have been caused by a tort committed in furtherance of the conspiracy." *Id.*

YOH cites the Sixth Circuit Court of Appeals for the standard for proving civil conspiracy in Ohio.

> "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant."

*Collyer v. Darling*, 98 F.3d 211, 229 (6th Cir.1996) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir.1985)). The Sixth Circuit Court of Appeals and the Supreme Court of Ohio have similar standards for civil conspiracy, but this Court will use the standard set forth by the Supreme Court of Ohio as the claim of civil conspiracy is one based in state law.

### b. Conclusions of Law

■ The Court finds that a civil conspiracy existed among the Defendants in this case. There was a malicious combination of two or more persons to injure another in person or property. Since malice is defined as "that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another[,]" *Williams,* 83 Ohio St.3d at 475, 700 N.E.2d 859, and the corporate entities, Barnett and Macejko, did indeed fraudulently transfer funds purposely, without a lawful excuse, to the injury of YOH, the first element is met.

The second element of "in a way not competent for one alone," *Kenty,* 72 Ohio St.3d at 419, 650 N.E.2d 863 (citations omitted), is met because in order to complete a transfer, there must be a transferor and a transferee. In this case, the transferor was Pathways Center and the transferee was RiverLake. Barnett and Macejko were included in the transactions as they were the required signatories on the checks, and they controlled all the corporate entities involved in the transfers. The underlying unlawful acts in the instant case are the fraudulent transfers. These transfers could not have been effectuated without all the people and corporate entities working together.

The third element of "resulting in actual damages[,]" *Kenty,* 72 Ohio St.3d at 419, 650 N.E.2d 863 (citations omitted), is met because the damage that resulted from the underlying unlawful acts is a lack of available funds to make payment on debts that Pathways Center owed to YOH. The damage was caused by the underlying unlawful acts, the fraudulent transfers.

### 3. Third Claim: Breach of Fiduciary Duty

#### a. Applicable Ohio Law

■ Generally, shareholders, officers and directors are not personally liable for the debts of the corporation. *See Belvedere Condo. Unit Owners' Ass'n,* 67 Ohio St.3d at 287, 617 N.E.2d 1075. There is, however, an exception to this rule that holds individual shareholders, officers and directors liable if the individual is merely the alter ego of the corporation and is using the corporation to perpetrate a fraud to the detriment of the corporation's creditors. *Id.* The Supreme Court of Ohio has held that

> the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Id.* at 289, 617 N.E.2d 1075. The first element that the corporation has no separate mind, will, or existence of its own is "a concise statement of the alter ego doctrine; to succeed a plaintiff must show that the individual and the corporation are fundamentally indistinguishable." *Id.* at 288, 617 N.E.2d 1075. That the loss resulted from the plaintiff's control, "is the requirement that the shareholder's control of the corporation proximately caused the plaintiff's injury or loss." *Id.* at 288–89, 617 N.E.2d 1075.

### b. Conclusions of Law

■ Upon reviewing the record as a whole, the Court concludes that the corporate form in the instant case may be disregarded, and Defendants Barnett and Macejko may be held personally liable. First,

the control over Pathways Center that Barnett and Macejko had was so complete that Pathways Center had no separate existence. It was merely the alter ego of Barnett and Macejko. Barnett and Macejko were the shareholders, officers and directors of Pathways Center. They were the board of directors as well as the officers of the company. They also owned RiverLake, which in turn owned Pathways Center's holding company. By virtue of this complex chain of corporate entities, Barnett and Macejko were the owners of Pathways Center.

Second, Barnett's and Macejko's control over Pathways Center was exercised in such a manner as to commit fraudulent transfers against a creditor, YOH. Only Barnett and Macejko had check-writing authority, with no oversight on that authority. Moreover, the discussion in the Curl Dep., pages 87–88, lines 17–25, 1, regarding the method of bookkeeping is indicative of how complete Barnett's and Macejko's control over Pathways Center was. Whether the books were accurate or not remains unknown. What is known is that the fraudulent transfers were made with no documentation or memorialization. Notes were created much later, after the transfers were made, and backdated. Barnett and Macejko used their check-writing authority to transfer funds fraudulently to another corporation, which they owned.

Third, those fraudulent transfers caused injury to YOH. The damage that resulted from the underlying unlawful acts is a lack of available funds to make payment on debts that Pathways Center owed to YOH. The damage was caused by the underlying unlawful acts, the fraudulent transfers.

### 4. Relief

#### a. Remedy for Fraudulent Transfers

Under the Act, pursuant to Ohio Revised Coce § 1336.07, the remedy may be, *inter alia*, avoidance of the transfers, attachment or garnishment against the asset transferred or other property of the transferee, or other relief that the circumstances may require.

In the instant case, the two fraudulent transfers, totaling Seven Hundred Thirty–Five Thousand Dollars ($735,000.00), are avoided. Pathways Center states that it used the funds fraudulently transferred to purchase a new building, located at 945 Ambrose, East Liverpool, Ohio, to house the geriatric mental health facility. Since the funds are no longer available in their original form to be attached, YOH is granted a lien on the property at 945 Ambrose, East Liverpool, Ohio, in the total amount of the two fraudulent transfers, Seven Hundred Thirty–Five Thousand Dollars ($735,000.00).

In the event that the liquidation value of the property at 945 Ambrose, East Liverpool, Ohio, is insufficient to satisfy the judgment of Seven Hundred Thirty–Five Thousand Dollars ($735,000.00), YOH may execute on any property of any Defendant listed in this case, including the personal property of Barnett and Macejko. Since the corporate form is disregarded, each is personally liable for the amount of the judgment.

#### b. Punitive Damages and Attorney's Fees

The standard for granting punitive damages and attorney's fees in Ohio in the context of a fraudulent transfer is "[i]n an action for wrongful execution, actual malice, fraud or insult on the part of the wrongdoer must be shown in order to justify an award of punitive damages." *Columbus Fin., Inc. v. Howard*, 42 Ohio St.2d 178, ¶ 1, 327 N.E.2d 654 (1975) (Syllabus). Actual malice is defined as "that state of mind under which a person's conduct is characterized by hatred or ill will, a

416

spirit of revenge, retaliation, or a determination to vent his feelings upon other persons." *Pickle v. Swinehart,* 170 Ohio St. 441, 443, 166 N.E.2d 227 (1960). Legal or implied malice, however, is defined as "that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." *Id.*

 Actual malice must be found to award punitive damages. The Supreme Court of Ohio has held that "[i]f punitive damages are proper, the aggrieved party may also recover reasonable attorney fees." *Columbus Fin., Inc.,* 42 Ohio St.2d at 183, 327 N.E.2d 654.

 In the instant case, while the Court has found implied malice in the context of civil conspiracy, it does not rise to the level of actual malice. There was no hatred or ill will in the instant case. While unlawful and fraudulent, Defendants' activities do not reach the egregious level of actual malice. Punitive damages and attorney's fees are not appropriate and thus not granted.

### c. Prejudgment Interest

YOH asks for prejudgment interest from the date of each transfer on page 18 of their motion for summary judgment. YOH did not include any recitation of law or fact to support a finding for prejudgment interest. Pathways Center did not respond to the request for prejudgment interest. The Court reserves judgment on this issue pending further briefing by the parties on whether or not prejudgment interest shall be awarded in this case. The Court retains jurisdiction over the parties for the purpose of resolving the issue of whether or not to award prejudgment interest.

## CONCLUSION

YOH's motion for summary judgment is sustained to the extent that the Court finds that Pathways Center did fraudulently transfer funds on two occasions in the total amount of Seven Hundred Thirty–Five Thousand Dollars ($735,000.00), a civil conspiracy did exist among Defendants and that the corporate form is disregarded. The transfers are avoided, and YOH is granted a lien in the total amount of the fraudulent transfers on property of Defendants. YOH's motion for summary judgment is overruled to the extent that punitive damages and attorney's fees are not awarded. The Court reserves judgment on whether or not prejudgment interest is appropriate in the instant case, pending further briefing by the parties.